BRUCE L. SIMON (Bar No. 96241)
  bsimon@pswplaw.com
JESSICA L. GRANT (Bar No. 178138)
  jgrant@pswplaw.com
PEARSON, SIMON, WARSHAW & PENNY, LLP
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone:  (415) 433-9000
Facsimile:  (415) 433-9008

CLIFFORD H. PEARSON (Bar No. 108523)
  cpearson@pswplaw.com
DANIEL L. WARSHAW (Bar No. 185365)
  dwarshaw@pswplaw.com
PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone:  (818) 788-8300
Facsimile:  (818) 788-8104

[Additional counsel listed on signature page]
*Counsel for Foam Factory, Inc., on behalf*
*of itself and all others similarly situated*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| FOAM FACTORY, INC., on behalf of itself and all others similarly situated,<br><br>      Plaintiff,<br><br>vs.<br><br>HICKORY SPRINGS MANUFACTURING COMPANY; VALLE FOAM INDUSTRIES (1995), INC.; DOMFOAM INTERNATIONAL, INC.; THE CARPENTER COMPANY; THE WOODBRIDGE GROUP; FLEXIBLE FOAM PRODUCTS, INC.; SCOTTDEL, INC.; FXI FOAMEX INNOVATIONS, INC.; FUTURE FOAM, INC.; VITAFOAM PRODUCTS CANADA LIMITED; VITAFOAM, INC.,<br><br>      Defendants. | CASE NO. **CV10 6606 MMM VBKx**<br><br>__CLASS ACTION__<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

FILED
10 SEP -3 PM 12: 28
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: _____

818023.2

1    Plaintiff, Foam Factory, Inc. ("Plaintiff"), by its undersigned attorneys,

2  individually, and on behalf of the Class described below, files this class action

3  complaint for treble damages and other relief under the antitrust laws of the United

4  States against defendants Hickory Springs Manufacturing Company, Valle Foam

5  Industries (1995), Inc., Domfoam International, Inc., The Carpenter Company, The

6  Woodbridge Group, Flexible Foam Products, Inc., Scottdel, Inc., FXI Foamex

7  Innovations, Inc., Future Foam, Inc., Vitafoam Products Canada Limited and

8  Vitafoam, Inc. (collectively "Defendants").  Upon personal knowledge with respect

9  to its own acts, and upon information and belief with respect to all other matters,

10  Plaintiff alleges as follows:

## I. <u>INTRODUCTION</u>

12    1.    This lawsuit is brought as a class action on behalf of Plaintiff and all

13  individuals and entities who purchased Flexible Slab Polyurethane Foam and/or

14  Flexible Slab Polyurethane Foam Products (together "Flexible Slab Polyurethane

15  Foam" or "Flexible Slab") in the United States directly from Defendants, their

16  predecessors, successors, parents, or controlled subsidiaries and affiliates from at

17  least as early as November 1, 2005 to the present ("Class Period").  Flexible Slab

18  Polyurethane Foam is a commodity widely utilized for cushioning and insulation in

19  a variety of goods, including but not limited to, household furniture, bedding,

20  packaging and carpet padding.

21    2.    Defendants are the leading manufacturers and producers of Flexible

22  Slab Polyurethane Foam in the United States and have established market

23  dominance over the Flexible Slab Polyurethane Foam industry during the Class

24  Period.  During the Class Period, Defendants were presented with a variety of

25  economic conditions that made the Flexible Slab Polyurethane Foam market

26  susceptible to collusion.

27    3.    Plaintiff is informed, believes and thereon alleges, that Defendants

28  exploited these market conditions during the Class Period by entering into an

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  unlawful combination and conspiracy, in order to artificially fix, raise, maintain or
2  stabilize the price of Flexible Slab Polyurethane Foam sold in the United States.

3      4.     As a result of their antitrust conspiracy, Defendants have been able to
4  charge artificially inflated prices for Flexible Slab Polyurethane Foam that cannot be
5  explained or supported by market fundamentals and which establishes a plausible
6  inference of conspiracy.  Specifically, between November 1, 2005 and the present,
7  Defendants were able to implement unusual and unprecedented increases in the
8  price for Flexible Slab Polyurethane Foam during periods in which input costs (i.e.
9  transportation and materials) and demand for Flexible Slab Polyurethane Foam
10 products were flat or decreasing.

11     5.     Plaintiff Foam Factory, Inc. purchased Flexible Slab Polyurethane
12 Foam directly from one or more of the Defendants during the Class Period.  As a
13 result of Defendants' unlawful conduct, Plaintiff and the Class have been forced to
14 pay supra-competitive prices for Flexible Slab Polyurethane Foam and have suffered
15 antitrust injury to their property or business.

16           **II.  JURISDICTION AND VENUE**

17     6.     Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton
18 Act, 15 U.S.C. §§ 15 and 26, for treble damages and other relief, including
19 reasonable attorneys' fees and costs of suit, for Defendants' violations of Section 1
20 of the Sherman Act, 15 U.S.C. § 1.

21     7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§
22 1331 and 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

23     8.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)
24 and (c) because, during the Class Period, one or more of the Defendants resided,
25 transacted business, was found, and had agents in this district and because a
26 substantial part of the events giving rise to Plaintiff's claims occurred in this district.

27     9.     This Court has *in personam* jurisdiction over each of the Defendants
28 because, inter alia, each defendant: (a) transacted business in the United States; (b)

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

818023.2

3
CLASS ACTION COMPLAINT

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1   directly or indirectly sold or marketed substantial quantities of Flexible Slab

2   Polyurethane Foam throughout the United States; (c) had substantial aggregate

3   contacts with the United States as a whole; and/or (d) was engaged in an illegal

4   price-fixing conspiracy that was directed at, and had the intended effect of causing

5   injury to, persons and entities residing in, located in, or doing business throughout

6   the United States, including in this district.

7                    III.  **INTERSTATE TRADE AND COMMERCE**

8            10.    During the Class Period, Defendants produced, manufactured,

9   distributed and sold Flexible Slab Polyurethane Foam through the means of

10  interstate commerce in a continuous and uninterrupted flow to customers located in

11  states other than the states in which Defendants market and sell such products.

12           11.    Defendants, and each of them, have used instrumentalities of interstate

13  commerce to market and/or sell Flexible Slab Polyurethane Foam.

14                          IV.  **THE PARTIES**

15  A.    **Plaintiff**

16           12.    Plaintiff Foam Factory, Inc. is a California corporation with its

17  principal place of business located in Rancho Dominguez, California.  During the

18  Class Period, Plaintiff purchased Flexible Slab Polyurethane Foam from one or

19  more of the Defendants.  As a result of the conspiracy herein alleged, the prices for

20  the Flexible Slab Polyurethane Foam that Plaintiff purchased from Defendants were

21  higher than they otherwise would have been in a competitive market.

22  B.    **Defendants**

23           13.    Defendant Hickory Springs Manufacturing Company ("Hickory

24  Springs") is a North Carolina corporation, with its headquarters located at 235 2nd

25  Avenue, N.W., Hickory, NC 28603 and has a regional office located at 4542 East

26  Dunham Street, Los Angeles, CA 90091.  During the Class Period, Hickory Springs,

27  either directly or through its affiliates, sold Flexible Slab Polyurethane Foam

28  throughout the United States.

14.     Hickory Springs is one of the nation's largest integrated components manufacturers and suppliers for the furniture and bedding industries with more than 60 operating facilities in the United States and throughout the world.  The furniture industry is the largest segment of Hickory Springs' customer base.  With more than 160 flexible polyurethane foam formulations, Hickory Springs is one of the United States' largest producers of foam.[1]

15.     Defendant Valle Foam Industries (1995), Inc. ("Valle") is a privately owned and operated corporation headquartered at 4 West Dr., Brampton, Ontario L6T 2H7, Canada.  Valle manufactures polyurethane foam for the furniture, bedding, packaging, carpet, and children's toy industries.  During the Class Period, Valle, either directly or through its affiliates, sold Polyurethane Foam throughout the United States.

16.     Defendant Domfoam International, Inc. ("Domfoam") is headquartered at 8785 Langelier Boulevard, Montreal, Quebec, H1P 2C9, Canada.  During the Class Period, Domfoam, either directly or through its affiliates, sold Flexible Slab Polyurethane Foam throughout the United States.

17.     Domfoam is Canada's largest polyurethane foam manufacturer.[2] Domfoam manufactures a diverse array of polyurethane foam products for various uses in the United States and Canada, including bedding, furniture, and mattresses.

18.     Defendant The Carpenter Company ("Carpenter") is a privately owned and operated company, with its headquarters located at 5016 Monument Avenue, Richmond, Virginia 23230.  Carpenter operates around 30 locations in the United States, including a regional office in Riverside, California.  During the Class Period, Carpenter, either directly or through its affiliates, sold Flexible Slab Polyurethane

_____

[1] http://www.hickorysprings.com/2008/History.html

[2] http://www.domfoam.com

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1 Foam throughout the United States.

2      19.    Carpenter is the largest manufacturer of "comfort cushioning" in the

3 world.[3]  Carpenter makes a wide variety of polyurethane foam and polyester fiber

4 comfort cushioning.  It operates through the following divisions: air filter media,

5 bedding, carpet cushion, chemicals, chemical systems, consumer products,

6 expanded polyurethane systems, flexible foam packaging furniture, molded

7 manufacturing, polyester fiber and tire products.[4]

8      20.    Defendant The Woodbridge Group ("Woodbridge") is a Canadian

9 corporation with its headquarters at 4240 Sherwoodtowne Boulevard, Mississauga,

10 Ontario, L4Z 2G6, Canada.  During the Class Period, Woodbridge, either directly or

11 through its affiliates, sold Flexible Slab Polyurethane Foam throughout the United

12 States.

13      21.    Defendant Flexible Foam Products, Inc. ("Flexible Foam") is a

14 privately owned and operated Ohio company, with its headquarters located at 200

15 East North Street, Spencerville, Ohio 45887, and has operations in multiple states,

16 including Texas, Indiana, Florida and Wisconsin.[5]  It is a subsidiary of Ohio

17 Decorative Products, Inc., also of Spencerville, Ohio.  During the Class Period,

18 Flexible Foam, either directly or through its affiliates, sold Flexible Slab

19 Polyurethane Foam throughout the United States.

20      22.    Flexible Foam is one of the world's largest suppliers of polyurethane

21 foam. It has been manufacturing polyurethane foam and rebond products for

22 customers in the bedding, flooring, furniture, packaging, and automotive industries

23 for over 50 years.

24 

25 [3] http://www.carpenter.com/

26 [4] *Id.*

27 [5] http://flexiblefoam.com/About/Locations.aspx

28 

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

818023.2

CLASS ACTION COMPLAINT

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

23.     Defendant Scottdel, Inc. ("Scottdel") is a privately held corporation, headquartered at 400 Church Street, Swanton, Ohio 43558.  Scottdel manufactures bonded urethane carpet cushion, and offers "a complete line of commercial and residential bonded urethane cushions ranging in density from 3.5 pounds to 10 pounds per cubic foot."[6]  Scottdel specializes in the sale of polyurethane foam utilized in carpet padding.  During the Class Period, Scottdel, either directly or through its affiliates, sold Flexible Slab Polyurethane Foam throughout the United States.

24.     Defendant FXI Foamex Innovations, Inc. ("Foamex") is a privately owned and operated company, with its headquarters located at Rose Tree Corporate Center II, 1400 Providence Road, Suite 2000, Media, PA 19063-2076.[7]  During the Class Period, Foamex, either directly or through its affiliates, sold Flexible Slab Polyurethane Foam throughout the United States.

25.     FXI Foamex Innovations, Inc. is the successor in interest to Foamex International, Inc., and a leading producer of foam products for the home, healthcare, electronics, industrial, personal care and transportation markets.  Its products include finished goods, sub-assemblies, services and raw materials for OEMs, fabricators and retailers.  In the words of their website "foam is everywhere."[8]

26.     Defendant Future Foam, Inc. ("Future Foam") is a privately owned and operated company, with its headquarters located at 1610 Avenue N, Council Bluffs, IA 51501 and operates a pouring plant located at 2451 Cypress Way, Fullerton, CA

---

[6] http://www.scottdel.com/about_us.htm

[7] http://www.fxi.com/html/06_contact.php

[8] http://www.fxi.com/html/01_company.php

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  92831.[9]  During the Class Period, Future Foam, either directly or through its
2  affiliates, sold Flexible Slab Polyurethane Foam throughout the United States.

3      27.    Future Foam produces foam products for bedding, foam blocks, carpet
4  cushion, furniture and packaging. It began producing foam in 1958 for the furniture
5  industry and currently has five foam pouring and carpet cushion plants and fifteen
6  fabrication plants. It is a leading supplier of bulk foam (buns) to foam fabricators
7  throughout the country.

8      28.    Defendant Vitafoam Products Canada Limited ("Vitafoam Canada") is
9  a privately owned and operated company, with its headquarters located at 150 Toro
10  Road, North York, Ontario M3J 2A9, Canada.[10]  During the Class Period, Vitafoam
11  Canada sold Flexible Slab Polyurethane Foam, either directly or through its
12  affiliates, throughout the United States.

13      29.    Vitafoam Canada manufactures all types of flexible polyurethane foam
14  for use in furniture, bedding and automotive applications, including packaging,
15  medical, industrial and a full range of memory foams.[11]  It also produces latex
16  mattresses and toppers.

17      30.    Defendant Vitafoam, Inc. ("Vitafoam, Inc.") is a privately owned and
18  operated company, with its headquarters located at 2215 Shore Street, High Point,
19  NC 27263.  During the Class Period, Vitafoam, Inc., either directly or through its
20  affiliates, sold Flexible Slab Polyurethane Foam, throughout the United States.

21      31.    Vitafoam, Inc. manufactures a wide variety of flexible slab
22  polyurethane products, including mattresses, furniture, and carpet padding.
23  Vitafoam Canada and Vitafoam, Inc. are hereinafter collectively referred to

24  _____

25  [9] http://futurefoam.com/location.asp
26  [10] http://www.vitafoam.ca/contact.php
27  [11] http://www.vitafoam.ca/index.php
28

1 | collectively as "Vitafoam."

2 | **V. <u>AGENTS AND CO-CONSPIRATORS</u>**

3 |     32.    Various other persons, firms and corporations, not named as

4 | Defendants in this complaint, have participated as co-conspirators with Defendants

5 | in the violations alleged herein, and aided, abetted and performed acts and made

6 | statements in furtherance of the conspiracy.

7 |     33.    The acts alleged against the Defendants in this Complaint were

8 | authorized, ordered, or done by their officers, agents, employees, or representatives,

9 | while actively engaged in the management and operation of Defendants' businesses

10 | or affairs.

11 |     34.    Each Defendant acted as the principal, agent, or joint venturer of, or

12 | for, other Defendants with respect to the acts, violations, and common course of

13 | conduct alleged by Plaintiff.

14 |     35.    Whenever this Complaint refers to an act, deed or transaction of a

15 | corporation or entity, the Complaint is alleging that the corporation or entity

16 | engaged in the act, deed or transaction by or through its officers, directors, agents,

17 | employees or representatives while they were actively engaged in the management,

18 | direction, control or transaction of the corporation's or entity's business or affairs.

19 | **VI. <u>CLASS ACTION ALLEGATIONS</u>**

20 |     36.    Plaintiff brings this action on behalf of itself and as a class action under

21 | the provisions of Rule 23(a) and (b)(2) & (b)(3) of the Federal Rules of Civil

22 | Procedure on behalf of all members of the following Class:

23 |         All persons (excluding governmental entities, Defendants, and the

24 |         present and former parents, predecessors, subsidiaries and affiliates of

25 |         the foregoing) who purchased Flexible Slab Polyurethane Foam

26 |         directly from any of the Defendants at any time during the period from

27 |         at least November 1, 2005 to the present.

28 |     37.    Plaintiff believes that there are hundreds or thousands of Class

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  members as above described, the exact number and their identities being known by

2  Defendants.  The Class is so numerous and geographically dispersed that joinder of

3  all members is impracticable.

4      38.   There are questions of law and fact common to the Class, which

5  questions relate to the existence of the conspiracy alleged, and the type and common

6  pattern of injury sustained as a result thereof, including, but not limited to:

7          a.   Whether Defendants engaged in a combination or conspiracy to

8  raise, fix, maintain or stabilize the prices of Flexible Slab Polyurethane Foam sold in

9  the United States;

10         b.   The duration and extent of the combination or conspiracy alleged

11  herein;

12         c.   Whether the alleged combination or conspiracy violated Section

13  1 of the Sherman Act;

14         d.   Whether Defendants took steps to actively conceal the

15  combination or conspiracy from Plaintiff and other Class members;

16         e.   Whether Defendants' conduct caused the prices of Flexible Slab

17  Polyurethane Foam sold in the United States to be artificially high and non-

18  competitive;

19         f.   Whether Plaintiff and members of the Class were injured by

20  Defendants' conduct; and

21         g.   The appropriate measure of damages sustained by Plaintiff and

22  other members of the Class.

23     39.   These and other questions of law and fact common to the members of

24  the Class, including legal and factual issues relating to liability and damages,

25  predominate over any questions affecting only individual members.

26     40.   Plaintiff is a member of the Class, Plaintiff's claims are typical of the

27  claims of the Class members, and Plaintiff will fairly and adequately protect the

28  interests of the members of the Class.

818023.2

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1   41.   Plaintiff's interests are coincident with, and not antagonistic to, those of
2   the other members of the Class.

3   42.   Plaintiff is represented by counsel who is competent and experienced in
4   the prosecution of antitrust and class action litigation.

5   43.   A class action provides a fair and efficient method for the adjudication
6   of this controversy.  The prosecution of separate actions by individual members of
7   the Class would create a risk of inconsistent or varying adjudications.

8   44.   A class action is superior to other available methods for the fair and
9   efficient adjudication of this controversy.  Such treatment will permit a large
10  number of similarly-situated persons to prosecute their common claims in a single
11  forum simultaneously, efficiently, and without the duplication of effort and expense
12  that numerous individual actions would require.  Class treatment will also permit the
13  adjudication of relatively small claims by many Class members who could not
14  afford individually to litigate an antitrust claim such as that asserted herein.  There
15  are no difficulties likely to be encountered in the management of this class action
16  that would preclude its maintenance as a class action and no superior alternative
17  exists for the fair and efficient adjudication of this controversy on behalf of Plaintiff
18  and the members of the Class.

19  45.   Defendants have acted, and refused to act, on grounds generally
20  applicable to the Class, thereby making appropriate final injunctive relief with
21  respect to the class as a whole.

22  **VII.  FACTUAL ALLEGATIONS**

23  **A.   The Flexible Slab Polyurethane Foam Market & Industry Background**

24  46.   Polyurethane foam is a man-made plastic material that can exist in
25  numerous states and is used in a large number of diversified applications, including
26  mattresses, bedding, carpets, upholstered furniture, automobile seat cushions,
27  insulation and packaging.

28  47.   Polyurethane foam can be either "flexible" or "rigid."  Flexible

818023.2

1 polyurethane foam is typified by open cells which make the end product soft, light,
2 resilient and breathable, and therefore ideal cushioning material for mattresses,
3 beddings, furniture, and carpets. Rigid polyurethane foam has closed cells which
4 translate to strong insulative properties, making it ideal for thermal insulation and
5 application in roofing, wall insulation and appliances.

6       48.    Flexible polyurethane foam can be produced through two
7 manufacturing processes. Molded flexible polyurethane foam is manufactured
8 utilizing a pour-in method of production where chemical compounds are deposited
9 into custom molds in order to form a particular end product. Flexible Slab
10 Polyurethane Foam is produced utilizing a more standardized manufacturing process
11 whereby the flexible foam is produced in a continuous slab that can be cut into
12 smaller pieces pursuant to customer specifications.

13      49.    To make Flexible Slab Polyurethane Foam, raw materials, including
14 polyols, isocyanates, additives and carbon dioxide, are held in stainless steel tanks,
15 where they are agitated to remain fluid and heat exchangers adjust their
16 temperatures to the levels that will allow them to react with each other. The
17 materials are then pumped into pipes where they join in a chemical reaction to form
18 polyurethane, which is then dispensed onto huge conveyor belts. As the
19 polyurethane is dispensed, it is mixed with carbon dioxide which causes it to rise
20 like bread. Rolls of baking paper guide the block of foam known as the "bun" as it
21 continues to expand. Catalysts and surfactants can be added to boost the reactions
22 and control the foaming process when making either rigid or flexible Polyurethane
23 Foam. A wide range of additives, including stabilizers, colorants, dyes, fire
24 retardants, and fungicides may be added to meet specific performance demands.

25      50.    The chemical mixture is poured onto a moving conveyer with sides
26 from 3 to 4 feet high where it reacts and expands into a slab. The continuous slab is
27 then cut, stored, and allowed to cure for up to 24 hours, at which point it undergoes
28 fabrication into useful shapes for a wide range of applications. This method is

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  called the "slabstock" production process, and it is used to manufacture most foam
2  for furniture, cushioning, carpet cushion and bedding.

3  51.  Flexible Slab Polyurethane Foam is widely used for its qualities: it is
4  durable, safe, lightweight, resilient, quiet, virtually odorless and resistant to mildew
5  and other triggers of common allergies.  In furniture and bedding applications, there
6  are few substitutes for Flexible Slab Polyurethane Foam.  According to the Polyester
7  Foam Association, "short staple polyester fiber is often used instead of FPF
8  [Flexible Polyurethane Foam], as is cotton, but both alternative materials have poor
9  height recovery characteristics after compression. Steel springs also recover well but
10  must be insulated from the user with some type of cushioning material. Comparing
11  FPF to alternative materials in the areas of economics, comfort potential, ease of
12  use, and durability, there is not an acceptable substitute for FPF."

13  **B.**   **Characteristics of the Flexible Slab Polyurethane Foam Industry**
14         **Made It Ripe for Collusion**

15  52.  The Flexible Slab Polyurethane Foam industry has several
16  characteristics that facilitate a conspiracy, including but not limited to: (1) high
17  market concentration; (2) economic barriers to entry; (3) commoditization and
18  standardization; (4) inelasticity of demand; and (5) participation in trade and
19  business associations.

20  **1.**   **High Market Concentration in the Flexible Slab Polyurethane**
21         **Foam Industry**

22  53.  During the Class Period, the Flexible Slab Polyurethane Foam industry
23  was dominated by relatively few companies that marketed, sold and distributed
24  those products throughout the United States.  For example, in 2004, the Herfindahl-
25  Hirschman Index ("HHI"), a standard measure of concentrations for the Flexible
26  Slab Polyurethane Foam market, was 1,896, which at the time would have been

27
28

818023.2

13

1    considered highly concentrated by the Federal antitrust enforcement agencies.[12]

2    54.    During this time, the named Defendants were responsible for

3    production of approximately eighty nine percent (89%) of the output share in the

4    Flexible Slab Polyurethane Foam market.  At the same time, none of the Defendants

5    had a market share that would make it economically feasible to charge supra-

6    competitive prices absent a collective agreement to conspire and fix the price of

7    Flexible Slab Polyurethane Foam.  This level of concentration provides an

8    environment in which the potential benefits of collusion are larger than in a more

9    concentrated market.  However, the number of firms needed to cartelize the vast

10   majority of industry output in Flexible Slab Polyurethane Foam is manageable.

11   55.    Plaintiff is informed, believes, and thereon alleges, that Defendants'

12   collective dominance and control over the Flexible Slab Polyurethane Foam market

13   motivated them to enter into conspiratorial agreements and facilitated their ability to

14   implement their conspiracy to fix the price of Flexible Slab Polyurethane Foam.

15   ### 2.    Economic Barriers to Entry

16   56.    There are significant manufacturing and financial barriers to entry in

17   the Flexible Slab Polyurethane Foam industry.  Due to the wholesale nature of

18   purchaser demand for Flexible Slab Polyurethane Foam and the impact of

19   economies of scale, competition in the Polyurethane Foam market requires the

20   investment of millions of dollars on manufacturing, technology, transportation,

21   workforce and other overhead associated with the industry.  These barriers to entry

22   have made it extremely difficult for smaller manufacturers to compete with

23   Defendants and have facilitated the dominance of Defendants over the industry.

24   

25   [12]  HHI is calculated by squaring the market share of each firm competing in a
26   market, and then summing the resulting numbers.  Under the newly released 2010
     merger guidelines, an HHI of 1,896 would be considered Moderately Concentrated.
27   See http://www.ftc.gov/os/2010/08/100819hmg.pdf

28

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1   57.   Therefore, the financial structure of the Flexible Slab Polyurethane

2   Foam industry allowed Defendants to implement their antitrust conspiracy by

3   eliminating competition and artificially stabilizing the prices of Flexible Slab

4   Polyurethane Foam market without losing market share.

5   **3.   Commoditization and Interchangeability of Flexible Slab**

6   **Polyurethane Foam**

7   58.   A "commodity product" is characterized as a product that is readily

8   interchangeable and for which competition is primarily driven by price rather than

9   other market pressures, such as branding and marketing.  The mass production and

10   interchangeability of commodity products results not only in pressure for

11   competitors to enter into conspiracies to fix and maintain prices, but serves as a

12   mechanism to successfully adopt and implement such conspiracies.

13   59.   As set forth above, Flexible Slab Polyurethane Foam is a homogeneous

14   commodity product produced via the generic "slabstock" manufacturing process.

15   As such, the Flexible Slab Polyurethane Foam supplied by one producer is

16   interchangeable with the product supplied by other producers.

17   60.   Accordingly, Flexible Slab Polyurethane Foam customers make

18   purchase decisions based largely, if not entirely, on price.  This commoditization

19   and interchangeability of Flexible Slab Polyurethane Foam facilitated Defendants'

20   conspiracy by making coordination on price much simpler than if Defendants had

21   numerous distinct products with varying features.

22   **4.   Inelasticity of Demand**

23   61.   "Inelastic demand" is an economic term that is used to describe a

24   situation in which the supply and demand for a good are unaffected when the price

25   of that good or service changes.  When the demand for a product is inelastic, it

26   ensures that the economic benefits of a collusive agreement to raise prices will not

27   be dissipated by a resulting stark drop in the quantity demanded at the new, higher

28   price.

818023.2

15

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

62.   The Polyurethane Foam industry has a number of economic factors and conditions that make its price "inelastic."  Specifically, Flexible Slab Polyurethane Foam presents an array of qualities and characteristics including light weight, durability, breathability, and strong recovery that ensure it cannot be easily replaced by a competing product.  The inelastic nature of the Flexible Slab Polyurethane made the market susceptible to increased profits as a result of collusion and allowed Defendants to implement their conspiracy without jeopardizing their output.

### 5.   Participation in Trade and Business Associations

63.   Plaintiff is informed, believes, and thereon alleges, that during the Class Period, Defendants were members in a number of business and trade associations serving the Flexible Slab Polyurethane Foam industry, including the Polyurethane Foam Association, Alliance of Flexible Polyurethane Foam, and Carpet Cushion Council.

64.   The Polyurethane Foam Association was founded in 1980 and its members produce seventy percent (70%) of the flexible polyurethane foam in the United States.  The Polyurethane Foam Association states its mission, "is to educate customers and other groups about flexible polyurethane foam (FPF) and to promote its use in manufactured and industrial products."

65.   The Alliance of Flexible Polyurethane Foam was established as a joint program by the Center for the Polyurethanes Industry of the American Chemistry Council and the Polyurethane Foam Associations.  The Alliance of Flexible Polyurethane Foam aims to educate potential customers regarding the benefits of flexible polyurethane foam in furniture and carpet padding applications.

66.   The Carpet Cushion Council is a trade association that specialized in the education and representations of suppliers in the carpet padding segment of the Flexible Slab Polyurethane Foam industry.  Its members include defendants Scottdel, Foamex, Future Foam, Valle Foam, and Vitafoam.

67.   Plaintiff is informed, believes, and thereon alleges, that participation in

1   these aforementioned trade associations provided Defendants with the opportunity

2   to conduct conspiratorial meetings.  Plaintiff is further informed, believes, and

3   thereon alleges that Defendants' in person collusive pricing discussions frequently

4   took place at trade association meetings.

5   **C.    Defendants Exploited Market Conditions by Adopting and Implementing**

6         **an Antitrust Conspiracy**

7         68.    Plaintiff is informed, believes and thereon alleges, that during the Class

8   Period, Defendants exploited the aforementioned market conditions in order to

9   implement a conspiracy to fix, raise, maintain and stabilize the price at which such

10  products were sold in the United States at artificially inflated and anti-competitive

11  levels.  Defendants' collusion is evidenced by unusual price movements in the

12  market for Flexible Slab Polyurethane Foam during the Class Period that cannot be

13  explained by market fundamentals.  As a result of their anticompetitive conduct,

14  Defendants are the subject of ongoing criminal investigations by antitrust authorities

15  in the United States and throughout the world.

16        **1.    Defendants' Prices Cannot be Explained by Market Fundamentals**

17        69.    Prior to the Class Period, the Flexible Slab Polyurethane Foam industry

18  was characterized by stable pricing.  Between January 1996 through October 2005,

19  the price of Flexible Slab Polyurethane Foam remained stable, even in the face of

20  moderate fluctuations in the cost of inputs.

21        70.    As can be seen in Figure 1, below, the most striking example of this

22  phenomenon occurred in late 2000 and early 2001, where the Producer Price Index

23  ("PPI") for Flexible Slab Polyurethane Foam furniture and furnishings[13] actually

24  declined by four percent (4%), during a period when the combined price for Toluene

25

26  ───────────────

27  [13]  Flexible Slab Polyurethane furniture and furnishings are one of the largest end
    use markets for Flexible Slab Polyurethane Foam.

28

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  Diisocyanates ("TDI") and Polyether Polyol ("Polyether")[1] (the two predominant

2  input cost variables for Flexible Slab) increased by approximately nine percent

3  (9%).  (*See* Figure 1, *infra*.)

4  **FIGURE 1**

5  **Polyurethane Foam Furniture PPI Compared to TDI and Polyether Polyol**

6  **Export Prices to Canada and Furniture Shipment Values**



Note:
"TDI and Polyether Export Price to Canada" calculated using the typical input requirement ratio of 2:1 Polyol to TDI.
Sources:
U.S. International Trade Commission HTS 3907200000; 2929101500; Bureau of Labor Statistics PCU3261503261504; and U.S.
Census Bureau M3 Timeseries 37S.

21      71.      However, during the Class Period, this stability gave way to remarkable

22  increases in prices for Flexible Slab Polyurethane Foam which reached

23  unprecedented levels.  Indeed, between October and November 2005, prices of

24  Flexible Slab Polyurethane Foam furniture and furnishings increased by forty one

26  ─────────────

[1]  TDI and Polyether are the primary physical components of Flexible Slab

27  Polyurethane Foam, comprising virtually all of the physical inputs of manufacturers.

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  percent (41%).  (*See* Figure 1, *supra*).

2      72.    While this particular increase in price was almost contemporaneous

3  with a sharp increase in TDI and Polyether prices, it was inconsistent with long-

4  standing stability of output prices in the face of input cost fluctuation.  Furthermore,

5  the price increases in October and November of 2005 cannot be solely attributed to

6  rising input costs, because the increase in price of Flexible Slab Polyurethane Foam

7  during this period far outpaced the corresponding rise in the combined price of TDI

8  and Polyether. Figure 2, below, depicts this highly unusual pricing behavior during

9  the Class Period in greater detail.

10  **FIGURE 2**

11  **Polyurethane Foam Furniture PPI Compared to TDI and Polyether Polyol**

12  **Export Prices to Canada and Furniture Shipment Values**



24  Note:
"TDI and Polyether Export Price to Canada" calculated using the typical input requirement ratio of 2:1 Polyol to TDI.
Sources:
25  U.S. International Trade Commission HTS 3907200000; 2929101500; Bureau of Labor Statistics PCU3261503261504; and U.S. Census Bureau M3 Timeseries 37S.

27      73.    Even after input costs stabilized, Defendants' prices for Flexible Slab

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  Polyurethane Foam again increased sharply several times during the Class Period –
2  from April 2006 through October 2006, from April 2008 through August 2008, and
3  from May 2009 through at least early 2010. (*See* Figures 1 & 2, *supra*).

4      74.    Moreover, during the Class Period, demand for Flexible Slab
5  Polyurethane Foam was flat or decreasing, which should have resulted in lower, not
6  higher, prices.  Indeed, by 2009, Defendants faced a market that was subject to
7  declining input prices and reduced demand for Flexible Slab Polyurethane Foam.
8  Nevertheless, Defendants' prices defied conventional market behavior, and actually
9  increased during the second half of 2009. (*See* Figures 1 & 2, *supra*).

10     75.    These sharp price increases cannot be explained by changes in raw
11  material prices, shifts in demand, or conscious parallel pricing.  Indeed, while the
12  cost of certain inputs increased during the Class Period, the amount of those
13  increases was not sufficient to support the very large price increases for Flexible
14  Slab Polyurethane Foam.

15     76.    Defendants coordinated price increase announcements to effectuate
16  their conspiracy.  For example, Defendants announced price increases of thirteen
17  and one-half percent (13.5%) in 2007, at least twenty percent (20%) in 2008, twenty
18  percent (20%) in 2009 and twenty percent (20%) in 2010.  By reason of these price
19  increase announcements, Defendants were able to implement price increases and/or
20  stabilize the prices in the market for Flexible Slab Polyurethane Foam.

21     77.    Upon information and belief, these coordinated price increases and
22  irrational price movements were the result of conspiratorial discussions regarding
23  price fixing and market allocation of Flexible Slab Polyurethane Foam between
24  Defendants and their co-conspirators.  These collusive discussions among
25  competitors were conducted primarily by means of telephone, electronic mail, and
26  in-person meetings and resulted in understandings and agreements on most price
27  increases for Flexible Slab Polyurethane Foam going back to at least November
28  2005.

818023.2
20

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

### 2.    **Government Antitrust Investigations**

78.    On or about July 27, 2010, news organizations reported that United States FBI agents raided the offices of defendant Carpenter in connection with its potential involvement in a world-wide price fixing and market allocation conspiracy in the market for polyurethane foam.  News services reported that FBI agents took boxes and bags of information out of the building and forced several of its offices to close.  One employee told a local television station that FBI agents would not let her get next to her computer and an IT employee stated, "company supervisors sent them home by departments and they were the last to leave."

79.    The raid conducted in Virginia was part of a coordinated worldwide probe in the polyurethane foam market conducted by United States, European Union and Canadian competition regulators.

80.    On August 3, 2010, the European Commission ("EC") confirmed in a press release that on July 27, 2010, the EC carried out unannounced inspections at the premises of producers of polyurethane foam for potential violations of European Union ("EU") Treaty Rules, which, inter alia, prohibit certain anti-competitive practices.  The inspections were carried out in several EU member states, including Belgium, United Kingdom and Austria.

81.    The United States Department of Justice, through a spokesperson, also confirmed the raid and stated, "they can't comment on the case because it's sealed under a judge's court order."

82.    Separately, Carpenter confirmed the various government investigations, stating, "[i]n connection with a multi-jurisdiction investigation of the pricing practices related to polyurethane foam in North America and Europe, the US Government, the European Commission and the Ontario Commissioner of Competition have required that several manufacturers of polyurethane foam, including Carpenter Co. and several of its subsidiaries, produce certain information and documents.  Carpenter Co. is being fully responsive and cooperative with these

818023.2

21

1  entities to facilitate their review."

2  ## VIII.  **EQUITABLE TOLLING**

3      83.    Defendants engaged in the successful combination or conspiracy to

4  raise and fix prices, which had the effect of increasing prices to an artificially high

5  level, and which by its nature was inherently self-concealing.  During the Class

6  Period, Plaintiff had no knowledge of Defendants' unlawful combination or

7  conspiracy.

8      84.    Defendants' wrongful conduct was carried out in part through means

9  and methods which were designed to avoid detection, and which, in fact,

10  successfully precluded detection.

11      85.    Although Plaintiff exercised due diligence throughout the Class Period,

12  it did not and could not have discovered Defendants' unlawful combination or

13  conspiracy at any earlier date.  Defendants undertook affirmative acts of

14  concealment of their combination or conspiracy, including their attendance at secret

15  meetings, and engaging in secret conversations concerning the allocation of markets

16  and customers, and price increases for Flexible Slab Polyurethane Foam.

17      86.    In addition, Defendants wrongfully concealed their illegal conduct from

18  Plaintiff and other members of the Class by issuing or causing to be issued public

19  statements which falsely attributed price increases for Flexible Slab Polyurethane

20  Foam to factors other than Defendants' illegal scheme and unlawful conduct.

21      87.    Because their combination or conspiracy was kept secret by

22  Defendants, Plaintiff was unaware of the anticompetitive conduct concerning

23  Flexible Slab Polyurethane Foam that was secretly agreed upon as alleged herein.  It

24  was not until at least July 27, 2010, when it was disclosed for the first time that there

25  was a worldwide investigation into the market for Flexible Slab Polyurethane Foam,

26  that Plaintiff became aware, or could have become aware with the exercise of

27  reasonable diligence, of Defendants' anticompetitive conduct.

28      88.    As a result of the concealment of the conspiracy, Plaintiff asserts the

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  tolling of the applicable statute of limitations affecting the right of action by

2  Plaintiff.

3  **IX.  CLAIM FOR VIOLATIONS OF THE SHERMAN ACT (15 U.S.C. § 1)**

4     89.    Plaintiff incorporates by reference, as if fully set forth herein, the

5  allegations contained in the preceding paragraphs of this complaint.

6     90.    Beginning at least as early as November 1, 2005 and continuing to the

7  present, the exact dates being currently unknown to Plaintiff, Defendants entered

8  into and engaged in a combination or conspiracy in unreasonable restraint of trade

9  and commerce in violation of Section 1 of the Sherman Act.

10     91.    Pursuant to this combination or conspiracy, Defendants agreed to fix,

11  raise, maintain and stabilize prices of Flexible Slab Polyurethane Foam sold in the

12  United States.

13     92.    In addition, pursuant to their combination or conspiracy, Defendants

14  have implemented price increases for Flexible Slab Polyurethane Foam sold in the

15  United States.

16     93.    For the purpose of formulating and effectuating their combination or

17  conspiracy, Defendants engaged in anti-competitive activities, the purpose and

18  effect of which was to artificially fix, raise, maintain or stabilize the prices for

19  Flexible Slab Polyurethane Foam sold in the United States.  Defendants' anti-

20  competitive conduct included:

21        a.    Participating in meetings and conversations to discuss the

22  Flexible Slab Polyurethane Foam market in the United States and elsewhere;

23        b.    Agreeing to refrain and, in fact, refraining from competing

24  among themselves with respect to the sale of Flexible Slab Polyurethane Foam in

25  the United States;

26        c.    Communicating with each other regarding the prices to be

27  charged for Flexible Slab Polyurethane Foam;

28        d.    Agreeing to charge prices at certain levels and otherwise raise,

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

818023.2

1  fix, maintain or stabilize the prices of Flexible Slab Polyurethane Foam sold in the
2  United States and elsewhere;

3      e.     Agreeing to divide and allocate customers and markets in which
4  Flexible Slab Polyurethane Foam is sold;

5      f.     Exchanging information about Flexible Slab Polyurethane Foam
6  prices and sales volumes;

7      g.     Monitoring and implementing the arrangements among cartel
8  members; and

9      h.     Selling Flexible Slab Polyurethane Foam to Plaintiff and
10  members of the Class in the United States at the agreed upon and supra-competitive
11  prices.

12      94.    Defendants' combination or conspiracy had the following effects,
13  among others:

14      a.     Competition in the sale of Flexible Slab Polyurethane Foam by
15  Defendants has been restrained, suppressed and/or eliminated;

16      b.     Prices for Flexible Slab Polyurethane Foam sold by Defendants
17  in the United States have been raised, fixed, maintained or stabilized at artificially
18  high and non-competitive levels; and

19      c.     Plaintiff and members of the Class have been deprived of the
20  benefit of free and open competition in the market for Flexible Slab Polyurethane
21  Foam sold in the United States.

22      95.    Defendants' combination or conspiracy to unreasonably restrain trade
23  and commerce by artificially reducing or eliminating competition in the United
24  States for Flexible Slab Polyurethane Foam constitutes a violation of Section 1 of
25  the Sherman Act (15 U.S.C. § 1).

26      96.    As a result of Defendants' unlawful conduct, prices for Flexible Slab
27  Polyurethane Foam were raised, fixed, maintained and/or stabilized in the United
28  States at a level higher than they would have been in the absence of the anti-

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1   competitive conduct alleged in this Complaint.

2       97.   As a result of Defendants' unlawful conduct, Plaintiff and the other

3   members of the Class have been injured in their businesses and property in that they

4   have paid more for Flexible Slab Polyurethane Foam than they otherwise would

5   have paid in the absence of Defendants' unlawful conduct.

6       98.   As a direct and proximate result of Defendants' scheme, Plaintiff and

7   the members of the Class have been injured and financially damaged in their

8   respective businesses and property, in amounts which are presently undetermined.

9   Plaintiff's injuries consist of paying higher prices to purchase Flexible Slab

10  Polyurethane Foam than it would have paid absent Defendants' conduct.  Plaintiff's

11  injuries are of the type the antitrust laws were designed to prevent and flow from

12  that which makes Defendants' conduct unlawful.

## X.  REQUEST FOR RELIEF

13  

14      **WHEREFORE**, Plaintiff prays that the Court enter judgment on its behalf

15  and on behalf of the Class herein, adjudging and decreeing that:

16      1.   This action may proceed as a class action, with Plaintiff as the

17  designated Class Representative and its counsel as Class Counsel;

18      2.   Defendants have engaged in a contract, combination, and conspiracy in

19  violation of Section 1 of the Sherman Act (15 U.S.C. § 1), and Plaintiff and the

20  Class have been injured in their businesses and property as a result of Defendants'

21  violations;

22      3.   Plaintiff and the members of the Class recover damages sustained by

23  them, as provided by the federal antitrust laws, and that a joint and several judgment

24  in favor of Plaintiff and the Class be entered against the Defendants in an amount to

25  be trebled in accordance with such laws;

26      4.   Defendants, their subsidiaries, affiliates, successors, transferees,

27  assignees, and the respective officers, directors, partners, agents, and employees

28  thereof and all other persons acting or claiming to act on their behalf be permanently

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1 | enjoined and restrained from continuing and maintaining the combination,

2 | conspiracy, or agreement alleged herein;

3 |     5.    Plaintiff and the members of the Class be awarded pre-judgment and

4 | post-judgment interest, and that such interest be awarded at the highest legal rate

5 | from and after the date of service of the initial Complaint in this action;

6 |     6.    Plaintiff and the members of the Class recover their costs of this suit,

7 | including reasonable attorneys' fees as provided by law; and

8 |     7.    Plaintiff and the members of the Class receive such other or further

9 | relief as may be just and proper.

10 |

11 | DATED:  September 2, 2010

By: _____

Bruce L. Simon (Bar No. 92641)
Jessica L. Grant (Bar No. 178138)
PEARSON, SIMON, WARSHAW &
PENNY, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone:  (415) 433-9000
Facsimile:   (415) 433-9008

Clifford H. Pearson (Bar No. 108523)
Daniel L. Warshaw (Bar No. 185365)
Bobby Pouya (Bar No. 245527)
PEARSON, SIMON, WARSHAW &
PENNY, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone:  (818) 788-8300
Facsimile:   (818) 788-8104

Eric George (Bar No. 166403)
egeorge@bwgfirm.com
BROWNE WOODS GEORGE LLP
2121 Ave of the Stars 24th FL
Los Angeles, CA 90067
Telephone:  (310) 274-7100
Facsimile:   (310) 275-5697

Counsel for Plaintiff and the Proposed
Direct Purchaser Class

*Left margin (vertical):* PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

# DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

DATED:  September 2, 2010

By: _____

Bruce L. Simon (Bar No. 92641)
Jessica L. Grant (Bar No. 178138)
PEARSON, SIMON, WARSHAW &
PENNY, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone:  (415) 433-9000
Facsimile:   (415) 433-9008

Clifford H. Pearson (Bar No. 108523)
Daniel L. Warshaw (Bar No. 185365)
Bobby Pouya (Bar No. 245527)
PEARSON, SIMON, WARSHAW &
PENNY, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone:  (818) 788-8300
Facsimile:   (818) 788-8104

Eric George (Bar No. 166403)
egeorge@bwgfirm.com
BROWNE WOODS GEORGE LLP
2121 Ave of the Stars 24th FL
Los Angeles, CA 90067
Telephone:  (310) 274-7100
Facsimile:   (310) 275-5697

Counsel for Plaintiff and the Proposed
Direct Purchaser Class

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV10- 6606 MMM (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

*Failure to file at the proper location will result in your documents being returned to you.*

**ORIGINAL**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

FOAM FACTORY, INC., on behalf of itself and all others similar situated

PLAINTIFF(S)

v.

Hickory Springs Manufacturing Company; Valle Foam Industries (1995), Inc.; Domfoam International, Inc.; The Carpenter Company: The Woodbridge Group; Flexible Foam Products, Inc.; Scottdel, Inc.; FXI Foamex Innovations, Inc.; Future Foam, Inc.; Vitafoam Products Canada Limited: and Vitafoam, Inc.

DEFENDANT(S) .

CASE NUMBER

**CV10 6606  ◄MMM VBKx**

**SUMMONS**

TO:   DEFENDANT(S): Hickory Springs Manufacturing Company; Valle Foam Industries (1995), Inc.; Domfoam International, Inc.; The Carpenter Company; The Woodbridge Group; Flexible Foam Products, Inc.; Scottdel, Inc.; FXI Foamex Innovations, Inc.; Future Foam, Inc.; Vitafoam Products Canada Limited; and Vitafoam, Inc.

A lawsuit has been filed against you.

Within _21_____ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ⌐x⌐ complaint ⌐___⌐ _____ amended complaint ⌐⌐counterclaim ⌐⌐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Bruce L. Simon_____ , whose address is _44 Montgomery Street, Suite 2450, San Francisco, California 94104_____ . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: SEP - 3 2010
_____

By: _____

**CHRISTOPHER POWERS**

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                  SUMMONS                                            CCD-1A

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐ ) | DEFENDANTS |
|---|---|
| FOAM FACTORY, INC., on behalf of itself and all others similar situated | HICKORY SPRINGS MANUFACTURING COMPANY; VALLE FOAM INDUSTRIES (1995), INC.; DOMFOAM INTERNATIONAL, INC.; et al. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| BRUCE L. SIMON (SBN 96241)<br>PEARSON, SIMON, WARSHAW & PENNY, LLP<br>44 Montgomery Street<br>Suite 2450<br>San Francisco, California 94104<br>(415) 433-9000 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant )

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes  ☐ No     ☒ **MONEY DEMANDED IN COMPLAINT: $** Amount according to proof.

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Sherman Act (15 U.S.C. § 1)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☒ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | | ☐ 443 Housing/Acco-mmodations | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

FOR OFFICE USE ONLY:   Case Number:   CV10 6606

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

| CV-71 (05/08) | CIVIL COVER SHEET | Page 1 of 2<br>CCD-JS44 |
|---|---|---|

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).   IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   [X] No   [ ] Yes

If yes, list case number(s): _____

**VIII(b).   RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   [X] No   [ ] Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   [ ]   A. Arise from the same or closely related transactions, happenings, or events; or

[ ]   B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ]   C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ]   D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX.  VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.

[ ]   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

[ ]   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | See "Attachment 1" |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.

**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**

Note: In land condemnation cases, use the location of the tract of land involved

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date September **2**, 2010

BRUCE L. SIMON

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

*Foam Factory, Inc. v. Hickory Springs Manufacturing Co., et al.*

## Civil Cover Sheet "Attachment 1"

| Defendant | County of Residence |
|---|---|
| Hickory Springs Manufacturing Company | North Carolina |
| Valle Foam Industries (1995), Inc. | Canada |
| Domfoam International, Inc. | Canada |
| The Carpenter Company | Virginia |
| The Woodbridge Group | Canada |
| Flexible Foam Products, Inc. | Ohio |
| Scottdel, Inc. | Ohio |
| FXI Foamex Innovations, Inc. | Pennsylvania |
| Future Foam, Inc. | Iowa |
| Vitafoam Products Canada | Canada |
| Vitafoam, Inc. | North Carolina |

818197.1